## GRIFFEN v. SPRAGUE ELECTRIC CO.

### (Circuit Court, S. D. New York. May 8, 1902.)

**1. CONTRACT—BREACH—ACTION FOR DAMAGES.**

Defendant was a builder of electric elevators, and plaintiff was the inventor of a safety device for use in such elevators. The parties entered into a contract by which defendant agreed to build in its shop an apparatus for giving the device a thorough test, and, if it proved satisfactory, to equip an elevator therewith, and to recommend it to its customers, plaintiff to assist in preparing for and making the tests. Before their completion, defendant sold out its business, and abandoned the contract, because it had thus disabled itself from carrying it out, and not because the tests were unsatisfactory. *Held*, that plaintiff was entitled to recover as damages for breach of the contract the value of his time lost and expenditures incurred in and about the tests.

**2. EVIDENCE—STATEMENTS BINDING CORPORATION.**

Plaintiff had a contract with defendant corporation, and on a number of occasions called at the office of defendant's president in regard to it. On some of these occasions the president was absent, and his son had charge of the office, and plaintiff had conversations with him in relation to the matter. After defendant had abandoned the contract, plaintiff wrote the president in regard to it, and received a visit from the son, who stated that he came at his father's request in relation to the letter to see if a settlement could not be made. *Held*, that in an action for breach of the contract plaintiff was entitled to prove statements made by the son on such occasion, which were admissible to the same extent, and entitled to the same weight as against defendant, as would have been statements made in a written answer to plaintiff's letter.

At Law. On motion for new trial.

George W. Carr, for plaintiff.
Austen G. Fox, for defendant.

WHEELER, District Judge. The defendant was an extensive manufacturer of electric elevators for sale and use in the United States and Canada. The plaintiff invented a pneumatic safety apparatus for such elevators. They made a contract June 1, 1898, by which the defendant, as party of the second part, agreed it would, "at its expense and at its shop build and operate for a thorough test" the apparatus; and the plaintiff, as party of the first part, agreed, among other things, to devote his personal time "for the test trial of the same at the Sprague Electric Company's shop." The contract contained these further provisions:

"The party of the second part reserves the right to limit these tests or to extend them in accordance with its own judgment, and to reject the apparatus finally at any time during the tests." "The party of the second part agrees that, if the aforesaid test is satisfactory to the said party of the second part, it will without unnecessary delay have built a complete apparatus in accordance with the plans of the party of the first part, or of such alterations of the same as are agreed upon, and at its expense, and equip in a building in New York City an elevator with this pneumatic safety; and that after such installation, provided its operation is satisfactory and approved, it will recommend and use the said safety in connection with its elevators wherever, in its judgment, it is practicable to do so."

An apparatus was constructed for tests at the defendant's shop under direction of the plaintiff and engineers of the defendant. In De-

cember, 1898, the defendant sold out its elevator manufacturing business, without notice to the plaintiff or reservation in respect to this
contract with him, to the Otis Elevator Company, but saving to itself
the right to do for that company two-fifths of the work for use in the
United States and Canada. Many tests were made, and a favorable
report upon them was made by the defendant's engineers, and shown
to the plaintiff. In May, 1899, the defendant threw out the apparatus
from the shop to the scrap heap, of which the plaintiff heard. The
president of the defendant company was president of the Postal Telegraph Company, and his office was in the building of that company.
The plaintiff had seen the president's son in charge of the office in the
absence of his father, sitting at his father's desk, writing; and had had
interviews with him about this business in the absence of his father.
After the apparatus was thrown out, the plaintiff wrote a letter to
the president about it, dated June 9, 1899. The plaintiff testified that
the president's son called on him at his office, and (against full objection) that the son "said that his father had told him to come and
see me in regard to the letter which I had sent to him, which, I believe,
was dated June 9, 1899. He said: 'Mr. Griffen, I want to see if we
cannot arrange this matter. We have received a report on this case,
and the tests have all been carried through, and are satisfactory,
but we cannot go ahead on the matter because the Sprague Electric
Company has disposed of its elevator business to the Otis Elevator
people. We want to see if we cannot arrange this.'" On directions,
in substance, to return a verdict for the plaintiff for the value of his
time and expenditures about making the tests if the defendant rejected
the apparatus because it had sold out and did not want the apparatus,
and not because it had come to the conclusion in good faith that the
tests were unsatisfactory, the jury found for the plaintiff for $2,500,
which is not claimed to be excessive. But, without waiving exception
to the directions, the defendant has moved to set aside the verdict for
the admission of the testimony as to the sayings of the president's son.

The sale to the Otis Elevator Company disabled the defendant from
fulfilling its agreement to install this equipment in a building in New
York City and recommend it to its customers. To permit him to
spend his time and money on the expectation that the defendant would
carry out the contract, when it had, without his consent or knowledge,
so changed its circumstances that it could not do so, would seem, as
a matter of law, to entitle him to recover what it had falsely induced
him to so lay out. The defendant was not bound to go on unless the
tests were satisfactory, but it got itself where it could not go on
whether they were satisfactory or not. This view was considered
somewhat at the trial, but to take a finding by the jury was deemed
best. If correct, the testimony was wholly immaterial. If not, after
the apparatus had been thrown out without notice to the plaintiff, it
was proper for him to ascertain the attitude of the defendant in respect
to the contract, and no better place for that is apparent than at the
office of the president. What that attitude was is a part of the plaintiff's case, and what would properly show it would be admissible. The
son had been held out by the position in which he had been placed as
a proper medium of communication with the president; and the plain-

tiff had a right to rely upon what he said, as coming from the president, stating the position of the company to the plaintiff. It was not a mere hearsay statement, but an accredited message, as a letter from the president in answer to the plaintiff's letter would have been.

Motion denied.